**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

YAN Y.,

Petitioner,

v.

ERIC KLANG, *Sheriff of Crow Wing County, Minnesota, in his official capacity*;

DAVID EASTERWOOD, *Acting Director, Immigration and Customs Enforcement St. Paul Field Officer, in his official capacity*;

DAVID J. VENTURELLA, *Acting Director, U.S. Immigration and Customs Enforcement, in his official capacity*;

MARKWAYNE MULLIN, *Secretary of Homeland Security, in his official capacity*; and

TODD BLANCHE, *Attorney General, in his official capacity*,[1]

Respondents.

Civil No. 26-4788 (JRT/JFD)

**MEMORANDUM OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

---

Keren Ohana, **LAW OFFICE OF KEREN OHANA**, 26 Court Street, Suite 1917, Brooklyn, NY 11242, and Marc Prokosch, **PROKOSCH LAW LLC**, 1700 West Highway 36, Suite 570, Roseville, MN 55113, for Petitioner.

Carl Berry and David W. Fuller, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Federal Respondents.

---

[1] Automatically substituted for successor under Fed. R. Civ. P. 25(d).

Petitioner Yan Y. is a citizen of China who is currently in Immigration and Customs Enforcement ("ICE") custody in Minnesota. On November 11, 2026, Petitioner filed a Petition for a Writ of Habeas Corpus alleging that her arrest and continued detention violate 8 U.S.C. § 1226(a) and the Fifth Amendment. Because the Court finds that the Petitioner's initial arrest was conducted pursuant to an invalid warrant, the Court will order immediate release.

**BACKGROUND**

Petitioner Yan Y. is a citizen and a national of China. (Pet. Writ of Habeas Corpus ("Pet.") ¶ 12, Nov. 11, 2026, Docket No. 1; Decl. of William J. Robinson ("Robinson Decl.") ¶ 4, Ex. A at 2, Nov. 18, 2026, Docket No. 8.) On September 17, 2024, Petitioner entered the United States pursuant to a B-2 visitor visa, which authorized her admission through March 16, 2025. (Robinson Decl. ¶ 4, Ex. A at 2.) On January 28, 2025, Petitioner filed a Form I-589 Application for Asylum and Withholding of Removal. (Pet. ¶ 16 & Ex. A at 4.) On August 20, 2025, Petitioner was issued an Employment Authorization Document that expires on August 12, 2030. (*Id.* ¶ 16, Ex. A at 4.)

On April 24, 2026, West Fargo police arrested Ms. Yang for misdemeanor trespass.[2] (*Id.* ¶ 17.) Petitioner was held at Cass County Jail in Fargo, North Dakota. (*Id.* ¶ 18.) On April 25, 2026, ICE Enforcement and Removal Operations ("ICE/ERO") officers

[2] On May 29, 2026, the charge was dismissed without prejudice. (Pet. ¶ 17, Ex. K at 6.)

encountered Petitioner at the Cass County Jail. (Robinson Decl. ¶ 4, Ex. A at 2.) An ICE/ERO officer performed a records check on Petitioner, revealing that she had overstayed her B-2 Visa, that she had a pending I-589 Asylum application, and that she had been issued an I-765 Employment Authorization Document. (*Id.*) The ICE/ERO Officer informed Petitioner, through a Mandarin interpreter, that a Form I-200 administrative warrant ("Warrant") and a I-247 Notice of Action detainer would be "placed" with the Cass County Jail, and that she would then be turned over to ICE/ERO in Grand Forks, North Dakota. (*Id*. at 3.)

Later in the day on April 25, 2026, the ICE/ERO officer emailed the I-247 and the Warrant to Cass County Jail, which acknowledged the detainer and returned a signed copy. (*Id*.) The Warrant was issued on April 25, 2026, and was served on Petitioner on April 26, 2026, in Fargo, North Dakota. (Robinson Decl. ¶ 4, Ex. B.) On April 26, 2026, Petitioner was turned over to ICE/ERO custody and was transferred to the ICE/ERO office in Grand Forks, North Dakota. (Pet. ¶ 19; Robinson Decl. ¶ 4, Ex. A at 3.) The Warrant indicates that the probable cause determination was based on "statements made voluntarily by the subject to an immigration officer." (Robinson Decl. ¶ 4, Ex. B.) After being transferred to the ICE/ERO office in Grand Forks, Petitioner was issued a Form I-862

("NTA"). (Resp. at 2, Nov. 18, 2026, Docket No. 7; Robinson Decl. ¶ 4, Ex. D.) The NTA was executed on April 26, 2026, in Grand Forks, North Dakota. (*Id.* ¶ 4, Ex. D.)[3]

On June 8, 2026, at a bond hearing, an immigration judge denied bond after finding that Petitioner presented a flight risk. (*Id.* ¶ 4, Ex. F.) A subsequent "Bond Memo" providing the immigration judge's reasoning was issued on June 22, 2026. (*Id.*) On August 5, 2026, Petitioner timely appealed the denial of bond to the Board of Immigration Appeals ("BIA"); the appeal of the bond denial remains pending. (*Id.* ¶ 4, Ex. H; Pet. ¶ 22.)

On July 16, 2026, in an oral decision, an immigration judge denied asylum, withholding, and Convention Against Torture protection, and ordered that Petitioner be removed to China. (Robinson Decl. ¶ 4, Ex. G.) On July 20, 2026, the immigration judge issued a written summary of the oral decision. (*Id.*) On August 5, 2026, Petitioner timely appealed the removal order to the BIA; the appeal of the removal order remains pending. (Pet. ¶ 23 & Ex. H.)

Petitioner is currently detained at Crow Wing County Jail in Brained, Minnesota. (*Id.* ¶ 20.)

**DISCUSSION**

"[A]bsent suspension" by Congress, the Constitution guarantees that the "writ of habeas corpus remains available to every individual detained within the United States."

---

[3] The NTA lists Petitioner's current residence as the ICE facility in Crookston, Minnesota.

*Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. 1, § 9, cl. 2). District courts can provide habeas relief to persons detained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3).

Respondents[4] argue that this Court does not have jurisdiction to review Petitioner's claim because she was already afforded a bond hearing, which was denied due to the immigration judge's determination that Petitioner was a flight risk. But Petitioner is not challenging the immigration judge's denial of bond. Rather, she challenges the legality of her initial arrest. A post-detention bond-hearing does not address the legality of initial arrest—it is a vehicle to determine whether **continued** detention is warranted.[5] A post-detention bond hearing, then, cannot cure the illegality of the initial arrest and detention.[6] The Court therefore concludes that it has jurisdiction to address the legality of Petitioner's initial arrest.

---

[4] "Respondents" here includes only Federal Respondents, as no response was submitted on behalf of Eric Klang.

[5] *See Wilson T. v. Blanche*, Civ. No. 26-2981, 2026 WL 2445467, at *1 (D. Minn. Aug. 20, 2026) ("A bond hearing determines whether a person who is *lawfully* in immigration custody should remain detained or may be released on conditions. This habeas case presents a question that is antecedent and a threshold: whether ICE had lawful authority to arrest Petitioner and place him in custody in the first place. A bond hearing does not answer that question nor does it cure an arrest that was unlawful when made.")

[6] Courts across the country have concluded the same. *See, e.g., Diallo v. Jamison*, Civ. No. 26-4895, 2026 WL 2547269, at *3 (E.D. Pa. Aug. 28, 2026) ("Bond hearings provided by Section 1226(a) do not retroactively cure the initially unlawful detention of [petitioner]."); *Gongora Poot v. Hernandez*, Civ. No. 26-2580, 2026 WL 2516690, at *7 (W.D. Wash. Aug. 26, 2026) ("Although petitioner was provided with a bond hearing, a later bond hearing does not necessarily cure the initial due process violation."); *Dos Reis v. McShane*, Civ. No. 26-3775, 2026 WL 1746649, at *3

Respondents further argue that Petitioner was lawfully arrested under the authority of 8 U.S.C. § 1226(a).[7] Specifically, they argue that the arrest was lawful because both the Warrant and the NTA preceded Petitioner's arrest.

First, it is unclear when Respondents contend they "arrested" Petitioner. The Court notes, however, that Petitioner was never released between being arrested and detained by county officials and her transfer to the custody of ICE. At all times, she was either detained by county officials in county jail, being transported by ICE Officers, or being held by ICE officers at the ICE Office.

Second, and regardless, an arrest is unlawful where an NTA is issued **after** the Warrant is issued. 8 C.F.R. § 236.1(b) (providing that a Form I-200 administrative arrest warrant which authorizes a non-citizen's arrest must be issued "[**a**]**t the time of issuance of the [NTA], or at any time thereafter**" (emphasis added)); *Francisco M.A. v. Blanche*, Civ. No. 26-2032, 2026 WL 1229701, at *2 (D. Minn. May 5, 2026) (concluding that an arrest was unlawful when the Form I-200 administrative arrest warrant was not issued concurrent or prior to the issuance of an NTA).

---

(E.D. Pa. June 17, 2026) ("A later bond hearing does not necessarily cure the alleged constitutional violation that preceded it."); *Huang v. Genalo*, Civ. No. 26-2975, 2026 WL 1091194, at *3 (S.D.N.Y. Apr. 22, 2026) ("A bond hearing cannot retrospectively cure the due process violation, which derived from Petitioner's unlawful arrest and detention without the statutorily required exercise of discretion." (citations omitted) (cleaned up)).

[7] The Court notes that Petitioner is not detained pursuant to a final order of removal. Rather, because Petitioner timely appealed the immigration judge's order of removal, the order is not "final." *See* 8 U.S.C. § 1101(47)(A)–(B).

Here, in their own briefing, Respondents confirm that Petitioner was issued the NTA after the Warrant; indeed, the Warrant was emailed to the Cass County Jail on April 25, 2026, but the NTA is not dated until April 26, 2026. Furthermore, the Warrant was served in Fargo, where Petitioner was initially picked up by ICE, while the NTA was signed in Grand Forks, the location of the ICE Office where Petitioner was taken after she was transported from Fargo to Grand Forks. Thus, Respondent's own records confirm that the NTA was issued after the warrant. Accordingly, the Court concludes that the warrant was invalid and will order Petitioner's immediate release. *See Francisco M.A. v. Blanche*, 2026 WL 1229701 at *3 (ordering release where NTA was issued after Warrant).

In addition to ordering Petitioner's release, the Court will also impose additional conditions to provide an effective remedy. For the reasons articulated in *Juan Y.P.M. v. Mullin*, Civ. No. 26-4662, 2026 WL 3521183, at *3 (D. Minn. Nov. 16, 2026), the Court finds that a pre-deprivation hearing is necessary to protect the liberty interests of Petitioner. Specifically, before re-detaining Petitioner, the Court will order that Respondents must first provide her with adequate notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the Respondents will bear the burden of establishing that detention is appropriate by clear and convincing evidence.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner Yan Y.'s Petition for Writ of Habeas Corpus (Docket No. [1]) is **GRANTED**, as follows:

1. Respondents shall **RELEASE** Petitioner from custody as soon as practicable, and **no later than 48 hours from the filing of this Order**.

a. Respondents shall coordinate with Petitioner's counsel regarding the time and location of release.

b. Respondents must release Petitioner with all personal effects, such as driver's licenses, passports, or immigration documents, and **without conditions** such as location tracking devices.

2. Respondents **SHALL NOT** re-detain Petitioner without providing her with adequate notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, at which the government must bear the burden of establishing that detention is appropriate by clear and convincing evidence.

3. The parties shall provide the Court with a status update concerning the status of Petitioner's release by **no later than 4:00 p.m. on November 24, 2026**.

DATED: November 20, 2026
at Minneapolis, Minnesota.

/s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge